Case number 21-3057, Sierra Club, et al. v. Environmental Protection Agency, et al. Oral argument not to exceed 15 minutes per side, with 15 minutes to be shared by the petitioners and 15 minutes to be shared by the respondents and intervener. Ms. Woxpress, you may proceed for the petitioner. Your Honors, and may it please the Court, I'm Megan Woxpress on behalf of Sierra Club and Ohio Environmental Council. We have reserved three minutes for rebuttal. EPA acted unlawfully by using an error correction mechanism within the Clean Air Act to affect a change in policy by eliminating Ohio's air nuisance rule from its state implementation plan. Before discussing why petitioners have standing and why removal of the air nuisance rule was unlawful, however, I would like to address the letter to the Court submitted by Intervener Ohio yesterday. This letter acknowledges that in July 2021, the Ohio Attorney General brought a complaint for injunctive relief and civil penalties against a steel facility, alleging that the facility created a nuisance in violation of the air nuisance rule and the facility's Title V permit. This belatedly produced letter illustrates why the air nuisance rule is important to Ohioans, why it has a nexus with the NAAQS, the National Ambient Air Quality Standards, why petitioners' injuries would be redressed by the reinstatement of the air nuisance rule, and why vacatures the appropriate remedy in this case. First, this complaint exemplifies a situation where the permit provides no other remedy for emissions that produced a violation of the Clean Air Act's LED standard than the air nuisance rule. The air nuisance rule serves an important gap-filling purpose, ensuring that citizens are not exposed to air pollution in excess of the Clean Air Act's air quality standards where permit conditions or monitoring are otherwise insufficient. Second, the complaint alleges that the defendant has created a nuisance by emitting sufficient quantities of LED so as to lead to a violation of the NAAQS in the vicinity of the plant. The complaint relies on the fact that, by definition, exceedances of the NAAQS endanger public health. The nexus between the air nuisance rule and the NAAQS is clear. Third, the civil penalties and injunctive relief sought by the Ohio Attorney General could not be obtained through a nuisance tort suit. The air nuisance rule makes maintaining ambient concentrations below the NAAQS a condition of operation for major stationary sources of criteria pollutants. The elimination of this provision from Ohio's SIPP, State Implementation Plan, deprives petitioners of the ability to enforce this condition against the polluters that are harming them. Moreover, and unlike the Ohio Attorney General, petitioners would have to show numerous other elements to establish tort liability to obtain relief under a common law nuisance claim. Petitioners' injuries are thus redressable by relief in this proceeding, and they have standing. How about citizen suits? Are citizen suits allowed just under Ohio common law? No, Your Honor. And that's one of the distinctions on this rule, right? It allows citizen suits, and that's what your organization has repeatedly done. Yes, Your Honor. Fourth, this letter reveals that Ohio has used the air nuisance rule to achieve attainment of the NAAQS by bringing enforcement actions against individual polluters whose emissions lead to exceedances. The primary basis on which the U.S. EPA relied in adopting the final rule challenged here, the final rule being the removal of the air nuisance rule, and in defending its position that the air nuisance rule lacks a nexus to the NAAQS, and I'm referring here to the responding brief by U.S. EPA, all of this has been substantially undermined by this new information. EPA cannot remedy this on remand, and vacature is the appropriate remedy. Petitioners will file a formal response to Ohio's letter, and as that response will show, the docket in the Republic Steel case identified by Ohio includes subsequent filings with findings and orders by the director of the Ohio EPA relying on the air nuisance rule to allege violations at the Republic Steel facility. Did you just say that the EPA cannot remedy this on remand? Yes, Your Honor. I thought you favored the remand. We do not oppose voluntary remand in this case, but if the court reaches the merits, we believe vacature is the appropriate remedy. Okay, but as to the remand, you don't oppose the remand that the EPA is requesting, the voluntary remand? No, but we do request that the court clarify both the scope of the remand, and direct the EPA to respond in a shorter time period than they have asserted that they will do. These findings, so the findings by the director of the Ohio EPA in this Republic Steel docket actually predate the correspondence between Ohio EPA and the U.S. EPA. The citation for that is JA-129, on which the U.S. EPA relied in concluding the ANR was approved in error. So there are important new facts that have only recently come to light in this case as of yesterday. So as of having addressed the important new information not known to petitioners when we drafted our reply brief and allowing for any questions, I can take a step back and walk through the case more broadly, but I also want to highlight something with respect to the Ohio, Intervenor Ohio's arguments, which EPA, U.S. EPA itself acknowledges in footnote 9 of their brief, which is that Ohio's reasons in defense of the removal of the air nuisance rule, the basis they advance for doing so, was not the EPA's basis for doing so, and so cannot be the basis of upholding the EPA's final rule on appeal. Judge Givens, I don't have the supplemental authority that was filed yesterday. I don't have it in my file. Could we get copies of it so I know what you're talking about? I don't have it either. Oh, I'm so sorry, Your Honors. It was filed yesterday, and I believe there's been some attempts to refile it this morning. The Ohio AG filed a letter indicating that copies. Can we get copies? Oh, can we get copies? Ohio, do you have extra copies? I have one copy, Your Honor. I can bring it up to you. I was traveling yesterday. I'm so sorry. This is one of the problems. I'm not sure if you could not have filed this earlier, but late filings are a problem. We have a lot of cases, and if you file something at the last minute and you want us to talk about it, well, you're putting us at quite a disadvantage, and we appreciate it. You can file things as early as you can. But apparently, what did you say about trying to refile it this morning? They filed it improperly. There was a flurry of clerk's orders this morning. Okay. Are we supposed to consider this? It's filed as a 28-J letter. What it acknowledges is that in July 2021, the Ohio AG filed a suit against Republic Steel in Canton. This is old news then. Yeah. All right. I'm inclined to deny the filing on the basis it's late, it's not timely, and it's improper. You were prepared to respond to the filing. Well, not only did we respond to the filing, but the filing is actually beneficial to us. It indicates that the Ohio EPA did rely on precisely this air nuisance rule to bring litigation against a polluter, and the allegation was a sole allegation on the nuisance claim for violation of their Title V permit, alleging that the polluter had emitted lead to such a degree that there was an exceedance of the NAAQS in close vicinity to the facility. This is just a confirmation of the argument that you have already made before this court, correct? It is confirmation. That there are remedies, and that individuals can use this air nuisance rule, or should be able to use this air nuisance rule. Is that correct? It is confirmation, but it also undermines the statement in the final rule, which the U.S. EPA relied upon, which is that Ohio hadn't used this provision. U.S. EPA eliminated this rule saying, Ohio never uses it. We learned the day before hearing that, in fact, Ohio had used it, had used it as recently as last year, and used it as the sole allegation in a complaint for the creation of a nuisance due to lead pollution at a vicinity, in a facility in Ohio. You are out of time at this point. Sorry. Do we know whether the filing has actually been accomplished at this point? Yes, sir. We filed it yesterday because it did not file exactly under a 28-J. We filed it as a notice. The clerk this morning instructed us to refile it as a 28-J letter. And so it was filed yesterday. It was refiled this morning correctly as a 28-J letter. The filing has been accomplished. So presumably we will have access to it after we conference this case, when we get back to our offices. Which doesn't do us a lot of good, by the way. Yeah. I'll turn it over to my co-petitioner, Mr. Altman. Mr. Altman. Thank you. I'm starting my timer. I'm David Altman. I'm here on behalf of Donna Ballinger and Marilyn Wohl. The clear connection between the Air Nuisance Rule, which if you don't mind, I'll call the ANR, and the enforcement and maintenance of the NAAQS, or National Ambient Air Quality Standards, makes the ANR removal from the SIP, State Implementation Plan, an arbitrary and capricious use of air correction. In fact, over more than 40 years, the ANR has played a vital role in SIP enforcement. It assures the NAAQS pollutants, which are a special set of pollutants, are not circumventing NAAQS detection monitors. The ANR, which has been, up until the action taken, enforceable under the SIP for all that time, deterred the escape of criteria pollutants and their precursors from confinement in the air pollution controls and stacks that they were supposed to go through to make their journey out into the air monitors. Now, why are the precursors important? One of the big arguments in the briefs is that you can't consider anything other than the six criteria pollutants, and here's the Air Nuisance Rule that considers things more than that. The simple answer to that is the precursors of the six criteria pollutants include volatile organic compounds, which is a wide, wide range of chemicals that are not among the six, but they become one of the six as they make their journey to the monitors. That's what a precursor is. Or their chemicals releases particulate matter, and the particulate matter is any compound, which then gets out to the monitors in a size called PM2.10, but it can be any chemical. So it's altogether necessary that any Air Nuisance Rule, which accounts for these things before they make their journey out to the monitors, has to definitely include a broader array than just the six that are measured at the monitors. So only six are measured at the monitors, but when the journey starts, these things have a different identity and they become precursors as they move through the atmosphere. And then can be used for enforcement of the ambient air quality standards. Exactly, because they are the things that become the criteria pollutants. So anyway, the EPA recognized the SIP regulation must include precursors, and they did this back as far as in 1979 in that letter that they rely upon so greatly, but not for that point. They say that the SIP has to include room for precursors. It belongs in the SIP, and the SIP is how you maintain the National Ambient Air Quality Standards. So here's the issue. If the NACs are captured and flow through the pollution controls at any facility, they'll be distributed away from the facility and measured at the distant NACs monitors. Pollution captured and confined to the controls does not escape into the nearby community, but pollution that escapes the capture and control system through holes or whatever means, and there are many, like turning off controls, but pollution that escapes these controls, when it reaches a danger, an endangerment to human health or harms property around a facility, this means the monitors aren't able to read what doesn't get to them. You open a door, and the thing that is supposed to be captured and distributed isn't there because it's blown out into the community. That's the way the laws worked for almost 50 years in Ohio. That's what was thrown away through this flawed process that we have briefed. So allowing pollution to escape capture and control defeats the NACs monitoring system. Placing the AR in the SIP, this is vital, made people who live around pollution sources sentinels. They provide the evidence, and that's what you have in the record in front of you, of all these cases, where they provided the evidence of the escaping confinement, that's apparently I'm at the end of my time, of the escaping confinement of the... You are at the end of your time. I'm not sure that ring was associated with it. It was my Apple iPhone telling me that I'm over. No, I've not had... Your Apple iPhone preferably would not be making any audible noise in the courtroom. I apologize. You would let the court keep the time, but you are done. Okay, well thank you very much. Good morning, your honors, and may it please the court. I'm Elliot Higgins from the Department of Justice representing EPA. I will be splitting my time with the intervener, the state of Ohio. I will argue for 12 minutes. Ohio will argue for three. I will seek to make two points today. First, petitioners lack standing to bring this case. Second, if petitioners have standing, EPA requests a voluntary remand. I will start with standing. Petitioners assert three theories of injury, but none establishes standing. Petitioners' primary theory is that EPA's removal of the nuisance rule causes a procedural injury, which has a relaxed standing standard. But this procedural injury characterization is incorrect. EPA's action complied with all relevant procedural rules, including notice and comment. Properly stated, what petitioners are actually asserting is an injury to their substantive rights, which is an injury that is not subject to a relaxed standard. Under the typical standing framework, petitioners have failed to show an injury in fact because petitioners remain able to bring their nuisance claims in state court under Ohio Code Section 3767.03. But Ohio doesn't recognize citizen actions like this, do they? Your honor, you're right. Fourth, the Ohio Air Pollution Control Act does not have a citizen suit analogous to the Clean Air Act citizen suit. However, petitioners may bring their nuisance claims under Ohio Code Section 3767.03. And while there are some differences, litigants suffer no injury by having a state court decide their nuisance claims. For their next two theories, Okay, I mean, why don't they have an injury? They've brought citizen suits in the past, and they were allowed under this rule, and now the rule is taking it away. So, I mean, you can't, they don't know what the next citizen suit would be that they would bring, but obviously you've taken it away. I mean, isn't that an injury in fact? We would hold that it's not, your honor, because petitioners remain able to bring this other version of nuisance. But it's a harder version. It's a different version. It's not the same. There are differences. Our position, however, is Isn't there injury even if it's not a huge injury? It's still an injury. It's a concrete injury. Our position is that it's not sufficient to constitute an injury in fact. However, if the court finds otherwise, and if the court finds that petitioners have standing here, EPA requests a voluntary remand to reconsider three discrete issues. One is the issue that we've already discussed a bit this morning, Ohio's disclosure yesterday that in 2021 it brought a nuisance claim concerning the lead NACs. So EPA wants to consider whether that has implications for the rule at issue here. And then EPA also wishes to consider the two issues that we identified in the brief, whether Section 7410K6 was the appropriate mechanism to use here, and three, whether Section 7515 required an anti-backsliding analysis. Remand is appropriate here because it would promote judicial economy. EPA may be able to supplement the record in ways that would clarify the decision for the court, and EPA may modify its decision in ways that may moot petitioners' challenge. Sierra Club wants us to put time frames on the remand. Are you agreeable to that? No, Your Honor. The time frame that they have laid out is insufficient. They propose a six-month deadline. That's inappropriate for a couple of reasons. One, if the agency decides to undertake an action that requires notice and comment rulemaking in the Federal Register, it will require more time. Also, it doesn't respect the fact that EPA has numerous other statutory deadlines, court order deadlines, and a finite number of resources here. So the six months that they're proposing is too short. However, EPA expects that it would complete the remand period within 12 months. And if the incorrect error correction action were vacated, does that change any of the time frames that you're asking for? No, Your Honor, because EPA may decide to take an alternative action. It may seek to remove the nuisance rule via another mechanism. It may seek to undertake a modified error correction mechanism, whereby the agency could decide that certain parts of the nuisance rule have a NAICS nexus. So there are a variety of different paths here that the agency could take, and we feel that it would be inappropriate to constrain the agency to this six-month period. But in the interim, the rule is repealed while you're reconsidering the repeal, right? No, Your Honor. We would prefer a remand without vacatur, which would leave the rule standing while EPA reconsiders its action. And we think that's appropriate here because one of the options is EPA could let its original rule stand with a supplemented rationale. So we view it as unnecessarily disruptive for the court to vacate the rule now, only for EPA to potentially take a revised version of that action in six to 12 months. The scenario I would be concerned about is if the rule was vacated, then petitioners or citizens bring nuisance claims, and then in six to 12 months EPA takes a similar action which modifies the rule, I'd be concerned that it would cause unnecessary confusion and disruption. Am I wrong procedurally? I mean, EPA has vacated the rule, haven't they? And that's what the appeal is about. No, Your Honor. Right now the rule is in – well, to clarify, EPA's rule is in effect. So what that means is EPA's rule, removing the nuisance rule from Ohio SIP is in effect. Right. So yes, that is currently the status quo. The nuisance rule is not currently in Ohio SIP. That's what we would maintain. Correct. While you remain. Okay. But isn't that made problematic by your opposing counsel's arguments regarding the viability of the claims that individuals in the Sierra Club have been bringing by using the ANR? And the success, obviously, the success that's now been revealed belatedly, of using that very rule to do exactly what the act is planned to do. Well, two things, Your Honor. At this point EPA doesn't in fact know whether Ohio's action was successful or whether it actually resulted in reductions of criteria pollutant emissions. I've only seen the complaint. So I don't know what the outcome of that action was. But I would also say that – But I'm struggling with your argument that there's just no impact unless the people who want to bring these claims prove that they won and that it's a direct response of their winning, then changes were made. Because what you've got in the record here and in cases that have been – some of the other cases that are cited in the briefs is evidence that the individuals, I think here Ballinger and Wall and the Sierra Club and Ohio Environmental Council have in fact used this ANR successfully sometimes to do consensual agreements, sometimes to force claims to be considered, items that could not be done under Ohio's Air Pollution Act or under the very limited circumstances of the public nuisance rule in Ohio. Correct? Your Honor, we made that argument on redressability in the context of standing. It is of course petitioner's burden to establish standing and they have to establish redressability. We did not view that evidence as sufficient to establish that it is likely that a favorable decision of this court would redress petitioner's injuries. Because as you indicated, they would have to show that they will bring these claims, that it's likely that they will bring these claims, that it's likely that they would have success with these claims. No, that's your argument, is that they have to jump through all these hoops. And my statement in question to you is, haven't the briefing and the earlier activities on behalf of these individuals and the Sierra Club actually shown effective enforcement use of the ANR? I mean, that's a redressable activity. And so you had used that earlier as a reason that I think doesn't work. Because what we're seeing is that these individuals have in fact used the ANR as a remedy and a tool and obviously now the Ohio AG has shown that that's been used within Ohio as well. Your Honor, we focus in on whether the nuisance rule has been used to reduce the emissions of criteria pollutants. So the criteria pollutants are the pollutants for which EPA has promulgated NACs, National Ambient Air Quality Standards, and the EPA has only promulgated six NACs. So whether... How do you respond to your opposing counsel's argument that those are not limited to those six discrete categories, but also address particulates that can be measured as well and then can be the basis for environmental action by either individuals or environmental organizations? Yes, Your Honor. So particulate matter actually is one of the NACs. So I think on remand EPA would consider whether there are aspects of this nuisance rule have a sufficient NACs nexus. If Ohio, for example, or if Ohio citizens are using the nuisance rule to reduce the emission of criteria pollutants, I think on remand EPA could potentially find that there is a NACs nexus. But EPA first needs to undergo that analysis. Your Honor, I'm not planning to discuss the merits today in light of the remand request, but if the court has any questions about the merits, I'd be happy to answer them. I think we're fine. Thank you for your time. May it please the court, Sam Peterson on behalf of the state of Ohio. I'd first like to apologize to the court and the counsel for the tardiness of our filing from yesterday or this morning. I know this court is understandably not thrilled about that, and I can assure you that we were equally not thrilled to discover that information yesterday. I can briefly, because you don't have it in front of you, recount what is in that. It is information related to the time frame of July 2021. Is that correct? Yes. When you give your explanation, would you please tell us why that information was not available and known to you and provided to opposing counsel for a year, for over a year? Your Honor, all I can say is during our preparations for argument, we were informed by others in the office who were responsible for that filing that it existed. So the folks who were filing the brief were not aware of it up until yesterday. My hand did not know what the left hand was doing, in other words. Yes, Your Honor. Again, I understand the court is not thrilled by the tardiness of the filing. I am equally not thrilled to be standing here before you explaining it. Okay. Now what does the filing say? The filing is a complaint that was filed by the state in the summer of 2021 in which the state brought a nuisance claim, and it relied on some evidence of nuisance violations, measured violations of the ambient air quality standard for lead. And we don't think that actually affects the legality of the EPA's action in this case for three reasons. Because it's actually the opposite of what the petitioners are arguing for in this case. What the petitioners are arguing for is saying that the air nuisance rule can be used to enforce the air quality standards. And this is the opposite. This is using the air quality standards as some evidence of a nuisance. Second, as a result of the action related to this facility, the US EPA has issued a notice of proposed rulemaking and has proposed to fine the state in non-attainment in that area of the state for the lead air quality standard. And so if the air nuisance rule was enough to show compliance with the air quality standard, if it met SIP purposes, there would not be a finding of non-attainment. Imagine if the shoe was on the other foot. If the state were now to turn around and say, we're not going to do anything different, we're just going to rely on the air nuisance rule to show compliance. US EPA would rightfully say that that is inadequate. It doesn't meet the other standards for things that belong in a SIP. And third and finally, this actually goes to a point that EPA made in its rulemaking, and we made at page 12 and 13 of our brief, which is using the nuisance rule to achieve criteria pollutant reductions is not equivalent to using it for SIP purposes. That comes from the federal rulemaking, and we noted in our brief at page 12 and 13, the question is not whether someone can bring either a citizen suit or a government claim for a nuisance against polluters who threaten attainment. Instead, it's whether the nuisance rule establishes an enforceable emissions limit as that is defined by federal law. It doesn't, and we would ask the court to affirm EPA's rulemaking in this case. If you have other questions, I'm happy to answer them. EPA says that this development from June of last year is a further reason why we should grant their request for voluntary remand so that they can analyze this and consider it. What's wrong with that argument? Your Honor, if faced between complete vacature of the rule and remand without vacature, we would obviously prefer the latter. But we don't think that remand is appropriate because, again, this doesn't change anything about the fact that the rationale U.S. EPA used is that this rule, the air nuisance rule, does not relate to the purposes of the SIP. How the state is going to show forward-looking... Isn't that really a matter for the administrative agency in the first instance for them? Don't they have more expertise in that area than we judges do to rule as a matter of law? I mean, voluntary remands in this situation are kind of routine, aren't they? And isn't that more of the custom, more of the routine remedy to grant a voluntary remand when the agency wants it? I think the court often does, but I actually think that the case that the U.S. EPA cites from this court, really they rely on Citizens Against Pellissippi Parkway as one of the reasons for requesting remand and to support that request, Your Honor. And I don't think that it supports remand in this case, and there's at least three reasons. But one of them is that the court there says that remand requests only are granted if they occur within a reasonable time. And the Pellissippi Parkway cites Belleville Mining, which is also a decision from this court. And here, U.S. EPA first asked for a delay to reconsider this rule in February of 2021. In July of 2021, they asked for an extension. And then in October and November, they came back to the court. They said, if we looked at this rule again, we're going to stand by our action. Briefing may proceed. And so they also had a late-breaking request in their briefs for this remand after the petitioners had filed their brief and the state had filed their brief. So I don't know that the court's precedent necessarily supports the granting of a remand request in this case. We think it would be preferable to affirm that this is a proper exercise of the K6 authority consistent with decades of EPA practice and precedent from Michigan, Nevada, Georgia, California, going back at least until 1999. So thank you, Your Honor. I appreciate it. That's your firm. Your Honors, on rebuttal, I'd like to respond briefly to Ohio's mistaken interpretation of the newly filed letter and to address the issue of vacature and remand, as well as EPA's arguments regarding standing. First, with regards to Ohio's claim that the letter is somehow the opposite of what we were arguing, the basis that the EPA cited for eliminating the air nuisance rule was that it lacked a nexus to the NAAQS, when in fact what we see in this litigation is an example of using the ANR combined with the finding under the NAAQS that a particular level endangers human health to bring about lower pollution. Second, there's a confusion here about the relationship between the SIP and individual enforcement actions. The NAAQS set forth a set of standards that the states are meant to meet, and then the purpose of the SIP is to devise a series of permit requirements, enforcement mechanisms, to enable the state, the U.S. EPA, and individuals through citizen suits to enforce emissions limitations at individual facilities so that the overall ambient levels stay below the NAAQS. And that is exactly what the litigation that the Ohio AG brought last summer was doing. The ANR serves a purpose by translating those ambient levels which must be met by the state into an individual enforcement mechanism against a particular emitter. Moving on to the issue of vacature and remand, I'd just point out with respect to both the scope of the remand and the timing of the remand, one of the items that EPA has not indicated that they will address on remand is whether there is a nexus between the NAAQS and the Air Nuisance Rule. And I think any remand order must explicitly direct them to reconsider that determination because that's the basis of the 10-K-6 usage, and why, in fact, we argue that the removal of the ANR was unlawful. Second, with respect to the timing, petitioners have now been unable to bring these citizen suits to vindicate their rights and to protect themselves from pollution for a number of years due to the abeyances and now due to the request for remand. And so I ask that the court remain conscious of the fact that any further delay while the EPA makes up its mind, petitioners continue to suffer pollution and are potentially prejudiced by the continued procedural delays in this proceeding. Finally, I'll just briefly address the argument that the tort nuisance presents an alternative form of redressability. As I believe your honors are aware through our briefing, there are really significant differences. There's a bond requirement. It's not at all clear that organizations can bring those kinds of tort nuisances and can't vindicate recreational rights of our members, and the remedies are different. The civil and injunctive relief sought by the Ohio AG are not available under that nuisance tort. And barring any questions, thank you so much for your time. We appreciate the argument all of you have given, and we'll consider the matter carefully. I believe there are no other argued cases, and the court may adjourn court.